**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| CLAYCO, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )    Case No. 4:20-mc-00739-MTS |
| | ) |
| FOOD SAFETY GROUP, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This case is before the Court on Plaintiff Clayco, Inc's ("Clayco") Motion to Confirm the Arbitration Award, Doc. [1], and on Defendant Food Safety Group, Inc.'s ("FSG") competing Motion to Vacate the Arbitration Award, Doc. [5].  The Court has heard argument in this case, the Motions are fully briefed, and they are ready for disposition.  For the reasons stated herein, the Court will deny Defendant's Motion to Vacate and grant Plaintiff's Motion to Confirm.

**I.     Background**

Plaintiff, Clayco, entered into a subcontract with Defendant, FSG, on a construction project of an industrial facility in Moore, South Carolina.  Docs. [1] & [4] at ¶ 6.  The subcontract required Defendant to furnish and install metal wall panels at an original cost of $4,321,133.00, which later increased to $4,415,077.00 after seven change orders were executed. *Id.*  The subcontract further required Defendant to provide all necessary materials, labor, equipment, supplies, and services to diligently prosecute its work in accordance with the progress schedule.  *Id.*

Plaintiff maintains that when Defendant did not complete its obligations under the subcontract in accordance with the progress schedule, Plaintiff provided Defendant with notice of default and notice to cure.  Docs. [1] ¶ 8.  After Defendant's work remained incomplete, on

November 12, 2016, Plaintiff terminated the subcontract.  *Id.*  Plaintiff then had to arrange for the task's completion at its own expense.

The parties' subcontract contained a dispute resolution provisions in Article XXVI. Docs. [1] & [4] at ¶ 9.  Subsections A through M of that Article provided for a detailed procedure requiring mediation followed by arbitration, if the mediation did not resolve the claims.  But Subsection N of that Article provided an alternate condensed and accelerated procedure "[n]otwithstanding the foregoing Paragraphs A through M" and gave Clayco the "option [to] invoke" it.  *Id.*  Subsection N in full provided:

> Notwithstanding the foregoing Paragraphs A through M of this Section XXVI, Contractor at its option may invoke the following dispute resolution provisions, to which Subcontractor agrees to be bound in lieu of the provisions stated in Paragraphs A through M above. Specifically, upon written application of Contractor, the parties agree to submit their dispute to resolution before the American Arbitration Association ("AAA") in accordance with the Construction Industry Mediation Rules of the AAA currently in effect at the time of the mediation, adjusted as follows: (a) Contractor will file a written demand with the AAA for mediation of the dispute, with the dispute to be heard by a mediator in St. Louis, Missouri; (b) the mediation shall be completed within 60 days after written demand for mediation is served upon the other party; (c) by no later than 14 days prior to the mediation, the parties shall serve upon the mediator and each other a written position statement, with exhibits, outlining their respective claims and defenses; (d) by no later than 3 days prior to the mediation, the parties shall serve upon the mediator and each other a written position statement in reply to that earlier filed by the other party; (e) after eight hours of actual mediation time to be conducted in a single day, if the matter is not resolved, the mediator shall immediately assume the role of an arbitrator; (f) the arbitrator shall not consider any item of evidence which was not produced by the parties in their respective statements of position nor disclosed to the other in the course of the Mediation, all as determined by the arbitrator; (g) at such time as the mediator shall become an arbitrator, each party shall promptly make one last, best and final offer and demand in writing, which shall be simultaneously submitted to the arbitrator; (h) the arbitrator shall then disclose to the parties the amounts of said last offers and demands; (i) within five days of having received said last offers and demands (but not earlier than seventy-two hours of having received said last offers and demands), the arbitrator shall issue an Award which shall adopt one and only one of said last offers or demands, without modification or amendment, and the same shall then constitute the award. Each side shall bear its own attorney's fees, costs and expenses, including AAA fees and expenses. The award of the arbitrator shall be final and binding, and judgment may be entered upon it in accordance with

applicable law in any court having jurisdiction thereof. If the award is issued prior to final completion of the Project, then the parties agree to sign a Change Order to reflect the award.

*Id.*

On August 22, 2019, counsel for Clayco submitted a Request for Mediation with the AAA. Doc. [9-1]. The letter accompanying the Request stated that Clayco requested mediation "pursuant to section XXVI.N of the parties' Subcontract Agreement." *Id.* Counsel for Clayco addressed the letter to the AAA and carbon copied Joseph Cacciatore, counsel for FSG. *Id.* On August 30, 2019, an email shows counsel for Clayco sent counsel for FSG "the subcontract containing the dispute resolution clause." Doc. [9-2].

On October 2, 2019, the then-Mediator selected for the case issued a scheduling order that plainly reflected the process under Subsection XXVI.N. Doc. [5-6]. "The Mediation is scheduled for eight hours of mediation time all to occur on the same day." *Id.* at 2. The order continued:

> Assuming the matter is not resolved during the mediation, the Mediator shall immediately assume the role of the Arbitrator. The Arbitrator shall not consider any item of evidence which was not produced by the parties in their respective statements of position nor disclosed to the other in the course of the mediation, all as determined by the Arbitrator.

*Id.* Days later, Clayco filed suit in South Carolina state court to secure an order compelling arbitration. Doc. [5-9]. In its pleading, Clayco stated that it had "invoked the dispute resolution procedure under section XXVI.N of the Subcontract Agreement." *Id.* ¶ 19.

On October 30, 2019, counsel for Clayco sent a letter to The Cincinnati Insurance Company and carbon copied FSG's counsel, like it did with the original letter to the AAA. Doc. [9-3]. This letter plainly stated that Clayco requested mediation "under section XXVI.N of the parties' Subcontract Agreement." Doc. [9-3] at 1. In addition to referencing Subsection N, the letter detailed the process for which Subsection N called. "The clause calls for eight hours of

mediation followed by a 'baseball arbitration' in which the mediator immediately takes the role of arbitrator, each side submits a best and final offer and the arbitrator chooses of the two offers as the award." *Id.* at 1–2.

More than nine months later, on August 13, 2020, Clayco and FSG engaged in eight hours of mediation but were unable to reach a resolution.  Docs. [1] & [4] at ¶ 11.  In accordance with Subsection XXVI.N, the Mediator then assumed the role of Arbitrator.  *Id.* ¶¶ 11, 12.  He accepted the parties' best and final offers, as Subsection N provides, and on August 18, 2020, the Mediator-turned-Arbitrator awarded Clayco a final award of $1,684,108.  Clayco filed a Motion to Confirm Arbitration Award on October 15, 2020, and FSG filed its Motion to Vacate Arbitration Award on November 12, 2020.

## II.      Discussion

The primary purpose of the Federal Arbitration Act is to ensure that "private agreements to arbitrate are enforced according to their terms."  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010).  The FAA provides that when parties have agreed that a judgment of a court may be entered upon an arbitration award, a party to the arbitration may, within one year of the award, apply to a court for an order confirming the award.  Thereupon, "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11" of the FAA.  9 U.S.C. § 9.  The Act does not authorize "*de novo* review of such an award on its merits; it command[s] that when the exceptions do not apply, a federal court has no choice but to confirm."  *UHC Mgmt. Co. v. Computer Scis. Corp.*, 148 F.3d 992, 997 (8th Cir. 1998).

The Act provides four grounds for which a court may vacate an arbitration award, 9 U.S.C. § 10(a), and "[t]he burden of proof rests squarely on the party attempting to vacate the arbitration award."  *M & A Elec. Power Coop. v. Local Union No. 702 Int'l Brotherhood of Elec.*

*Workers, AFL-CIO*, 773 F. Supp. 1259, 1262 (E.D. Mo. 1991).  A district court may make an order vacating an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

FSG's arguments in its Motion to Vacate stem from its assertion that Clayco failed to "'invoke' the condensed accelerated procedure set out in Section XXVI.N," Doc. [5] ¶ 18, and failed to "make 'written application' designating its intent to proceed with the alternate condensed procedure set out in XXVI.N," *id.* ¶ 19.  FSG argues that Clayco's failings caused the arbitration award in this case to be "entered through a process contrary to Clayco's agreement with FSG" making it "void and without effect."  *Id.* at 13.

The Court concludes that Plaintiff did invoke and make written application of Subsection N.  On August 22, 2019, counsel for Plaintiff, who had been in contact with counsel for Defendant, specifically referenced proceeding under Subsection N in the letter to the AAA, which also went to Defendant's counsel.  Doc. [9-1].  FSG argues that it "never received Clayco's initial letter to AAA" in which Clayco plainly informed the AAA and FSG's counsel that Plaintiff sought mediation pursuant to Subsection N of the parties' agreement.  Doc. [14] at 8.  Even if FSG's self-serving assertion that it never received that letter meets its burden and sufficiently establishes that it did not receive it, FSG has not explained why its lack of receipt of the letter matters.

Subsection N says only that Clayco needed to "invoke" the provision, which meant "[s]pecifically, upon written application of [Clayco], the parties agree to submit their dispute to resolution before the American Arbitration Association . . . ." Doc. [9-8] at 25–26. Clayco "invoke[d]" the procedure; it made a "written application" to the AAA. Subsection N's text does *not* require Clayco to make the written application *to* FSG. FSG agreed to the contract, Subsection N included. And further, Clayco never in any way concealed the use of Subsection N. Over the next several months, FSG received multiple documents that overtly and conspicuously stated the proceedings would be held according to Subsection N.

For example, in October 2019, months before the mediation/arbitration occurred, the Mediator issued a scheduling order that plainly reflected the process under Subsection XXVI.N. Doc. [5-6]. Later that same month, counsel for Clayco sent a letter to The Cincinnati Insurance Company and carbon copied FSG's counsel. Doc. [9-3]. Not only did the letter plainly state that Clayco requested mediation "under section XXVI.N of the parties' Subcontract Agreement," it also specifically described the process for which Subsection N calls. Doc. [9-3] at 1–2. The letter read, "[t]he clause calls for eight hours of mediation followed by a 'baseball arbitration' in which the mediator immediately takes the role of arbitrator, each side submits a best and final offer and the arbitrator chooses of the two offers as the award." *Id.* Nine months after that letter, the mediation and arbitration occurred just as the letter described.

Though these letters and other documents plainly communicated that the parties would use Subsection N, FSG never made a "formal written objection" to proceeding under Subsection N. Doc. [14] at 2. Instead, it submitted to this Court an affidavit of its counsel in which he states he "questioned the use of [the condensed dispute resolution] procedure" and "asserted that it was unfair." Doc. [5-1] ¶ 14. FSG argues that Clayco never "properly" invoked Subsection N, see Doc. [14] at 5, even though Clayco did make a written application to the AAA and FSG's

- 6 -

counsel specifically invoking the provision, see Doc. [9-3].  While FSG asserts Clayco's action was insufficient, FSG argues a formal written objection on its part was unnecessary since its counsel did "question[]" the use of the procedure.  That FSG must use an affidavit from its counsel saying he questioned the procedure indicates no record of any objection exists.  To paraphrase FSG, "[o]ne would think that if such an [objection] had been made, there would be a showing that such an [objection] was [overruled] or [sustained]."[1]  *See* Doc. [14] at 8.

Arbitration is a matter of contract.  *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 69 (2010).  The FAA does not prevent the enforcement of agreements to arbitrate using different rules than those set forth in the Act itself because such a result "would be quite inimical to the FAA's primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms."  *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989).  FSG contracted and agreed that, at Clayco's option, Subsection N would govern the dispute resolution process.  Clayco made a written application to use Subsection N, and exhibits submitted to the Court show that Clayco and the selected neutral provided FSG notice of the use of Subsection N's procedures time and again.  In response, FSG made no formal objection.  Instead, it chose to assert flimsy *post hoc* excuses only after the outcome displeased it.  *See Marino v. Writers Guild of Am., E., Inc.*, 992 F.2d 1480, 1484 (9th Cir. 1993)  ("[I]t is well settled that a party may not sit idle through an arbitration procedure and then collaterally attack that procedure on grounds not raised before the arbitrators when the result turns out to be adverse.").  Since the arbitration process took place as the parties contracted, and FSG waived

---

[1] The Court does not imply that had FSG made a formal written objection the process could have or should have proceeded differently.  Clayco plainly invoked Subsection N and made a written application to proceed under it.  Rather, the Court notes FSG's lack of objection to point out its contradictory position on formalities and to highlight the *post hoc* nature of its argument in the Motion to Vacate.  FSG "should have raised [its] procedural objection while the [Mediator-Arbitrator] had an opportunity to act on it."  *See Goff v. Dakota, Minn. & E. R.R. Corp.*, 276 F.3d 992, 998 (8th Cir. 2002).  Since it did not, it "waived any procedural defect."  *Id.*

any procedural defects even if it did not, FSG has not demonstrated any statutory grounds for vacatur.  The Court accordingly will deny the Motion to Vacate.

Having concluded that FSG's Motion to Vacate should be denied, the Court turns to Clayco's Motion to Confirm the Arbitration Award, Doc. [1].  As the FAA allows, the agreement at issue provided that a court having jurisdiction may enter a judgment on the award of the arbitrator.  Doc. [9-8] at 26.  Satisfied with its jurisdiction, and the timeliness of the Motion to Confirm, this Court "must grant" the order confirming the award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of [the FAA]."  9 U.S.C. § 9.  Since the Court concluded FSG's Motion to Vacate should be denied, the Court will grant an order confirming the award.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Vacate, Doc. [5], is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Confirm, Doc. [1], is **GRANTED**.

**IT IS FINALLY ORDERED** that Plaintiff's Motion to Strike, Doc. [10], is **DENIED as moot**.

An appropriate Judgment will be filed contemporaneously with this Memorandum and Order.

Dated this 8th day of March, 2021.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE

- 8 -